

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2004

# Naqvi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2026

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Naqvi v. Atty Gen USA" (2004). *2004 Decisions.* Paper 573.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/573

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2026

SYED MOSHIN RAZA NAQVI,
                    Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES

On Petition for Review of an Order of the
Immigration and Naturalization Service
Board of Immigration Appeals
(BIA No. A-78-435-586)

Submitted Under Third Circuit LAR 34.1(a)
May 26, 2004

Before: SCIRICA, Chief Judge, RENDELL and ALARCÓN*, Circuit Judges.

(Filed   June 30, 2004)

OPINION OF THE COURT

* Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the
Ninth Circuit, sitting by designation.

RENDELL, Circuit Judge.

Syed Moshin Raza Naqvi, a citizen of Pakistan, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In so ruling, the BIA affirmed without opinion the findings of the Immigration Judge ("IJ") that Naqvi lacked credibility because he offered inconsistent statements in his asylum applications and because he failed to provide any reasonable explanation for the absence of corroborating evidence that might support his testimony. We have jurisdiction under 8 U.S.C. § 1252. We will deny Naqvi's petition for review.

I.

Naqvi, a Pakistani citizen, is an adherent of the Shia Muslim faith, although the majority of Muslims in Pakistan are of the Sunni Muslim faith. In 1995, while enrolled in college in Pakistan, Naqvi became involved in a pro-Shia organization called the Imamia Student Organization ("ISO"). As a result of his involvement with the ISO, Naqvi claims to have been beaten and threatened on several occasions by a local Sunni Muslim group, Sipah-i-Sahaba Pakistan ("SSP"). Naqvi reported the attacks to the police but no official action was taken. In April 2000, Naqvi was arrested while attending a demonstration against anti-Shia violence. However, Naqvi does not clarify whether or not this demonstration was an illegal gathering that the police properly dispersed.

Additionally, in October 2000 Naqvi co-authored an article with Naumaan Hussain

2

that appeared in the local newspaper criticizing the SSP. Naqvi claims that in retaliation the SSP falsely accused Hussain and him of vandalizing a Sunni mosque. While Hussain was arrested, Naqvi was not. Naqvi does not explain why he was not also arrested. Believing Hussain to have been falsely detained, Naqvi filed a complaint against the police. Three days after he filed the complaint, Naqvi was arrested by the police, severely beaten by them and held for 36 hours until his captors were bribed by his family.

In November 2000, Naqvi along with twelve others sought to speak with a city official to further protest Hussain's detention. They were refused entry into the official's building and when the police were called in, Naqvi ran away. He initially fled to the capital city of Lahore, but upon hearing from his family that the police were looking for him, he fled the country.

In December 2000, Naqvi's family made arrangements for him to flee to Canada where he sought political asylum. However, in December 2001, the Canadian authorities did not find Naqvi to be credible and accordingly denied his asylum application.

Subsequently, in May 2002, Naqvi was caught attempting to illegally enter the United States. In his removal proceedings, Naqvi conceded his removability, but requested relief in the form of asylum and withholding of removal and protection under the Convention Against Torture.

On the morning of his asylum hearing, November 7, 2002, Naqvi filed a motion to continue the hearing because he expected to receive supporting documentation from his

3

family in Pakistan. The IJ denied the motion to continue because the hearing had already been continued several times. Naqvi also presented evidence from his Canadian asylum application, and the IJ entered his Canadian asylum application into evidence, but refused to accept the exhibits that accompanied the application.

The IJ denied Naqvi's claims on adverse credibility grounds. First, the IJ found that there were significant discrepancies between his Canadian and United States asylum applications. Second, the IJ found that his alleged membership in a Shia organization called the ISO was inconsistent with evidence suggesting that the ISO was actually a radical Sunni organization. Having concluded that these inconsistencies were material fabrications, the IJ held that Naqvi had filed a frivolous asylum application under 8 C.F.R. § 1208.20. On review the BIA set aside the IJ's frivolous petition finding but affirmed the IJ's determination in all other respects.

On appeal, Naqvi raises three arguments. First, Naqvi contends that the IJ erred in her adverse credibility determination because her conclusions were not based on substantial evidence. Second, Naqvi claims that he did not have a fair and reasonable opportunity to present evidence in support of his request to remain in the United States. Third, Naqvi claims that the IJ improperly denied his CAT claim.

II.

The Attorney General may grant asylum to any alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of

4

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden to prove a well-founded fear of persecution lies with the applicant, who must establish a genuine fear of persecution, and demonstrate that a reasonable person in the same circumstances would similarly fear persecution. The applicant's own testimony may be sufficient to establish eligibility for asylum, as long as the testimony is credible. 8 C.F.R. § 208.13(a).

Our review is limited to ensuring that any findings are supported by substantial evidence. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). We may reverse the IJ's decisions only if "any reasonable adjudicator [would] be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

III.

Naqvi contends that the IJ's adverse credibility determination was not based on substantial evidence. In particular, Naqvi contends that the discrepancies between his Canadian and United States asylum applications are minor.

In his Canadian asylum application, Naqvi failed to mention the article he co-authored or the arrests and beatings that followed. This Court has held that trivial omissions and minor contradictions are not to be held against petitioners. Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004). However, in Naqvi's complaint the arrests and beatings following the article appear to be the most violent and crucial of all the incidents discussed. Because Naqvi's United States asylum application centers around

5

those events, his failure to even mention his brutal beatings in the Canadian application was decidedly not a minor omission. Naqvi further contends that he intentionally left out information from his Canadian application for the purpose of brevity. But his Canadian application was certainly not sparse and indeed referenced several incidents of persecution that went unmentioned in his United States application. Accordingly, the IJ's credibility determination is supported by substantial evidence.

Relatedly, Naqvi challenges the IJ's findings with respect to his membership to the ISO. Naqvi contends that the ISO was a nonviolent Shia group. However, the Government submitted an article from a Pakistani newspaper and an assessment of Pakistani political organizations by the United Kingdom's Home Office which established that another group called the ISO was a renowned radical Sunni terrorist organization. Naqvi claimed that he had never heard of the Sunni ISO. The IJ reasoned that given the notoriety of the Sunni ISO it seemed highly unlikely that a student activist would be unaware of its activities, or that a ostensibly peaceful Shia group would willingly take on the same name as a violent Sunni terrorist organization. Naqvi contends that the Shia ISO could have taken the name to purposefully denounce the violent actions of the Sunni ISO. However, ex-post justifications are not sufficient to reverse an IJ's reasonable credibility determination. Accordingly, we conclude that the IJ's adverse credibility determination rested on substantial evidence.

6

IV.

Naqvi also contends that the IJ violated due process by excluding certain evidence and denying him a fair and reasonable opportunity to present evidence in support of his asylum application. There are two sets of evidence that are at issue: the evidence sent by Naqvi's family in Pakistan and the evidence regarding his Canadian asylum application sent by Naqvi's Canadian attorney.

On the morning of his asylum hearing, Naqvi's attorney filed a motion to continue the hearing stating that she expected to soon receive supporting documents from Naqvi's family, including letters written by family members and a copy of his police report. The IJ denied the motion, reasoning that Naqvi had been given ample time to collect evidence. On appeal to this Court, Naqvi contends for the first time that the IJ denied the motion to continue "on questionable logic." Yet because he failed to raise this issue before the BIA, we may not consider it.[1] Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d. Cir. 2003) ("An alien is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim."). Even were this issue properly before us, it would fall short on the merits. Naqvi had already received a continuance allowing him an additional five weeks to secure the materials

---

When Naqvi eventually received the materials from Pakistan, he filed a motion with the IJ to reopen the proceedings. But because Naqvi had already appealed the IJ's determination to the BIA, the IJ was divested of jurisdiction to reopen the proceedings. The right door to knock on was that of the BIA. Yet Naqvi never brought this particular issue to the BIA's attention.

7

from Pakistan. Moreover, as the IJ observed, he fled Pakistan in 2000, over two years before the hearing date. Given this ample time, the IJ does not appear to have erred in refusing to grant a continuance.

By contrast, Naqvi's petition for BIA review did include a challenge to the IJ's exclusion of the exhibits associated with his Canadian asylum application. On the morning of the asylum hearing, Naqvi's attorney informed the IJ that she had received documents from Naqvi's Canadian attorney. While the IJ accepted Naqvi's Canadian asylum application, including the decision of the Canadian authorities, into evidence, she refused to accept the application's accompanying exhibits, which included Naqvi's arrest warrant, his Pakistani driver's license and educational degrees. Naqvi claims that there was "absolutely no rational basis" for the IJ to accept the Canadian asylum application while excluding its related exhibits. As the IJ recognized, however, the Canadian asylum application was not like its related exhibits in that it bore the seal of the Federal Court of Canada and included a chain of custody. That document was obviously reliable while the other unauthenticated documents were not. Moreover, the IJ had already notified Naqvi, in an earlier proceeding in September of 2002, to submit his Canadian asylum application as evidence. Thus, Naqvi has not shown how the IJ erred in this respect.

V.

Finally, Naqvi contends that the IJ erred by holding that the adverse credibility

8

determination compelled a denial of his CAT claim.[2]  Accordingly, Naqvi argues that the legal test for CAT claims does not involve an assessment of credibility as do asylum claims.  This Court has held that "a decision-maker must review claims for relief under the Convention and consider relevant country conditions even where adverse credibility determinations have precluded relief under the INA."  Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003).  However, as in Tarrawally, Naqvi has presented no evidence that as a Shia Muslim, he would more likely than not suffer torture or other abuses by the Pakistani government.  Id.  Torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

There is no doubt that the 2001 Country Report on Humans Rights Practices included in the administrative record detailed violent conflicts between the Sunni Muslims and the Shia Muslims.  However, that evidence did not demonstrate that the Pakistani government specifically tortured or encouraged violence against Shia Muslims.  To the contrary, the country report indicated that the Pakistani government had recently embarked on a major effort to suppress religious extremism and address the intimidation of religious minorities.  Therefore, we will uphold the IJ's denial of Naqvi's CAT claim.

---

When analyzing CAT claims, "the burden of proof is on the applicant to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

9

## VI.

Accordingly, we will DENY the petition for review.

/s/ Marjorie O. Rendell
Circuit Judge